* * * * * * * * * * *
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence, reverses the Opinion and Award of the Deputy Commissioner.
 * * * * * * * * * * *
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties at the hearing as:
 STIPULATIONS
1. All parties are properly before the Commission, and the Commission has jurisdiction of the parties and the subject matter.
2. Employee is Jesus Alonso-Diaz.
3. Employer is Flanders Precisionaire.
4. The Carrier on the risk at the time of the alleged injuries was Broadspire [based upon Industrial Commission records, Broadspire is actually a third-party administrator].
5. Defendant-Employer regularly employs three or more employees and is bound by the North Carolina Workers' Compensation Act. The Employer-Employee relationship existed between the Employer and the Employee on April 7, 2004, the date of injury.
6. Employee's average weekly wage is $257.51, with a resulting compensation rate of $171.76.
7. The following exhibits of the parties have been stipulated into evidence:
(a) Johnson Ambulance Service medical records.
(b) Johnson Memorial Hospital medical records.
(c) UNC Hospital medical records.
(d) Industrial Commission Forms 18, 61, 33, 33R.
(e) Employee Handbook.
 (f) Plaintiff's Acknowledgment of Receipt of Employee Handbook.
 (g) Plaintiff's Response to Defendant's First Set of Interrogatories to Plaintiff
 * * * * * * * * * * *
Based on the foregoing Stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was born on June 5, 1964, and lives in Selma, North Carolina. He is married and has two children. He completed nine years of education in Mexico. Plaintiff has been employed in the past as a warehouse worker, dishwasher, janitor, bread factory worker, and as a factory worker for the Defendant. Plaintiff speaks very little English, and testified with the assistance of an interpreter at the hearing of this matter.
2. Plaintiff began his employment as a machine operator with Defendant in July 2003, and continued in this capacity until April 7, 2004, the date of injury.
3. On April 7, 2004, Plaintiff was engaged in his ordinary job duties operating a piece of factory equipment when the machine broke down. He notified his supervisor, Ruby Ordenez, and asked for instructions. He was directed to assist another worker, Martin Chavez, who was also known as "Luis." Plaintiff expressed his reservations about going to work with Mr. Chavez to Mr. Ordenez. Plaintiff told Mr. Ordenez that Mr. Chavez caused a lot of problems and he did not want to have any problems with him. Despite Plaintiff's concerns, he was directed to go ahead and assist Mr. Chavez with his work duties.
4. When Plaintiff approached Mr. Chavez at the new workstation, Mr. Chavez verbally expressed his desire that Plaintiff not work with him, saying that this was "his workspace." Plaintiff then went to Reggie Durham, his manager, and explained his concern about being assigned to work with Mr. Chavez. He was again directed to work with Mr. Chavez.
5. Following the direct orders of his supervisor and manager, Plaintiff returned to Mr. Chavez's regular workspace to begin working. Mr. Chavez immediately and without provocation attacked Plaintiff with a knife that he had concealed on his person. Mr. Chavez first slashed through the bridge of Plaintiff's nose in a horizontal fashion severing it completely in half. Plaintiff testified that initially he thought he had only been attacked by Mr. Chavez's fist, but was warned by a co-employee that Mr. Chavez was armed with a knife. Mr. Chavez continued to attack Plaintiff, slashing and stabbing him approximately five more times, injuring his face, neck, left shoulder, left arm, and upper back.
6. Mr. Chavez was later seen leaving the building, saying something to Ms. Imelda Fernandez in passing. Ms. Fernandez testified at hearing that she did not hear, or did not understand, the words that he said to her.
7. Plaintiff was terminated from his employment with Defendant that same day. Defendant conducted no investigation into whether Plaintiff was the aggressor in the attack prior to reaching its decision to terminate him.
8. Plaintiff testified that Mr. Chavez was well known for being "conflictive," having many problems with several people at work and for using illegal drugs; and those were the reasons he requested not to be assigned to work with him. Plaintiff also testified that he did not smoke, drink or use drugs and that he had never used drugs with, bought drugs from, or sold drugs to Mr. Chavez. Plaintiff further testified that he had no contact with Mr. Chavez outside of work in any capacity. Plaintiff's testimony is found to be credible.
9. Plaintiff was taken to Johnson Memorial Hospital by a coworker known to him only as "Jaime." He was then immediately transported by ambulance to the University of North Carolina Hospital in Chapel Hill (hereinafter UNC Hospital) for evaluation of his facial and neck injuries, particularly with respect to Plaintiff's carotid artery. He was evaluated by a teaching physician, Dr. Joshua Broder, and a resident physician, Dr. Larson Engelert. Dr. Broder is board certified in emergency medicine. After receiving treatment to close his various wounds, Plaintiff was discharged from UNC Hospital with instructions to return for evaluation by a plastic surgeon.
10. Plaintiff returned to UNC Hospital on April 14, 2004, where he was evaluated by a teaching physician, Dr. Lynn Damitz and a resident physician, Dr. Christopher Robinson. While there, he complained of weakness and tingling in his left hand, and reported decreased two-point discrimination. He was instructed to return the following week for removal of his sutures. Plaintiff was given work restrictions, which included no lifting with the left arm, no left-handed work, and that he should take breaks and rest as he deemed necessary.
11. Plaintiff returned to UNC Hospital on April 24, 2004, where Dr. Jane H. Brice evaluated him. Dr. Brice noted that Plaintiff had some decreased ability to abduct his left thumb. He was instructed to follow-up with the Plastic Surgery Department at UNC Hospital for continuing care and evaluation of his injuries. Plaintiff did not return for follow-up care with the plastic surgeon as he had been instructed to do, because he learned that his workers' compensation case had been denied and did not wish to incur further medical expenses without knowing whether his bills would be paid.
12. Plaintiff testified at hearing that he continues to experience weakness, pain and numbness in his left upper extremity and hand. Plaintiff is right-handed. He testified that due to his left upper extremity and hand condition he cannot move furniture around the house, but can lift a gallon of milk. Plaintiff further testified that he has sought employment through connections with family and friends and by submitting applications to numerous potential employers. Plaintiff sought work at numerous warehouses, factories and applied for janitorial jobs. Despite his efforts in searching for work, he has been unable to find suitable employment since his injury at work on April 7, 2004.
13. At the hearing of this matter, Defendant offered the testimony of Ms. Fernandez regarding a conflict that she had with Plaintiff at some point prior to April 7, 2004. She testified that Plaintiff had once said something "offensive" to her. She indicated that Plaintiff had made a remark suggesting that she was not working very hard on that particular day. She testified that she had related the events of this exchange to Mr. Chavez, who told her that she should tell him if Plaintiff ever gives her any further problems. However, on cross-examination she admitted that Mr. Chavez had been joking at the time. It does not appear from the record that Mr. Chavez ever did confront Plaintiff about this interaction with Ms. Fernandez.
14. Defendant also offered the testimony of José Luque at the hearing. Mr. Luque testified that at some time in the past, Mr. Chavez thought he had some audio cassettes stolen from his vehicle and Mr. Chavez suspected that Plaintiff was the culprit. On Mr. Luque's suggestion, Mr. Chavez conducted a further search for the audio cassettes rather than immediately confronting Plaintiff. Mr. Chavez found his audio cassettes and realized that they had never been stolen. It does not appear from the record that Mr. Chavez confronted Plaintiff about the tapes.
15. Plaintiff testified at the hearing that the only reason he could think of for the attack was that Mr. Chavez simply liked to work alone, and felt threatened by other people being able to perform the work that he performed.
16. The greater weight of the evidence establishes that Mr. Chavez attacked Plaintiff because of a dispute over the manner in which the work of Defendant was to be performed, as opposed to any personal animosity that may have existed between Plaintiff and him. The attack took place during business hours, at the workstation where the two men were assigned by Defendant to perform their duties. Plaintiff's injury from the attack occurred while he was performing duties he was directly ordered to perform by his supervisor. Plaintiff's injury also constituted an accident. Plaintiff's attack was unexpected and was without design on his part. Accordingly, the Full Commission finds that Plaintiff sustained an injury by accident, which arose out of and in the course of his employment with Defendant.
17. Dr. Broder opined that it was possible that Plaintiff may have suffered some nerve damage as a result of the lacerations to his left upper arm, despite the fact that he did not note any damage to nerve, vascular, or other deep structures on the date he examined Plaintiff. Dr. Broder testified that, if he had reevaluated Plaintiff one-week after the date of the attack and found that he had complaints of weakness, such complaints could indicate that Plaintiff had suffered nerve damage. He opined that ongoing complaints of weakness and/or numbness, decreased two-point discrimination, and decreased thumb abduction could all indicate that Plaintiff had some abnormal nerve function as a result of the injury. He also opined that it was possible that Plaintiff could have suffered an injury that escaped his initial examination.
18. Plaintiff's symptoms as noted in the UNC Hospital medical records dated April 14, 2004, and April 24, 2004, and as established through his testimony could be indicative of nerve damage; however, further medical evaluation is needed to determine the extent of his injury and disability.
19. The treatment Plaintiff received as a result of his injury of April 7, 2004, was reasonably necessary to effect a cure, give relief from pain, or lessen the period of his disability.
19. Plaintiff has not reached maximum medical improvement, and is in need of an evaluation by a competent medical specialist to assess his current condition and further treatment options that may be available for him to effect a cure, give relief from pain, or lessen the period of disability.
20. On the issue of disability, since this was a denied claim and Plaintiff did not have sufficient funds to pay for medical treatment, the medical evidence in support of Plaintiff's disability is incomplete. However, it is clear from the evidence that: (a) Plaintiff was given work restrictions on April 14, 2004, which included no lifting with the left arm, no left-handed work, and that he should take breaks and rest as he deemed necessary; (b) Dr. Brice instructed Plaintiff to follow-up with the Plastic Surgery Department at UNC Hospital for continuing care and evaluation of his injuries; (c) Plaintiff may have suffered some nerve damage as a result of the lacerations to his left upper arm; (d) Plaintiff had complaints of weakness and tingling in his left hand as noted in the UNC Hospital medical records a week after his injury which, in the opinion of Dr. Broder, could be indicative of nerve damage; (e) Plaintiff continues to experience weakness, pain and numbness in his left upper extremity and hand; and (f) despite Plaintiff's efforts, he has been unable to find suitable employment.
21. The Full Commission is of the opinion that the record needs to be reopened for further evaluation of Plaintiff's condition, the extent of his disability related to his injury and his need for further medical treatment.
22. Plaintiff did not constructively refuse suitable employment. He did not provoke the assault that led to his termination and there was no misconduct on his part.
23. Plaintiff appeared before the Full Commission for a viewing of his facial and bodily disfigurement. The scars viewed by the Full Commission were consistent with the description given in the April 7, 2004 medical notes of Dr. Broder. Plaintiff's external facial scars across his nose and on his jaw were clearly observable and marred his appearance. As a result of his injury by accident, Plaintiff has suffered serious facial disfigurement for which he is entitled to compensation. For his facial disfigurement, proper and equitable compensation is $8,000.00.
24. Plaintiff's average weekly wage is $257.51, with a resulting compensation rate of $171.76.
 * * * * * * * * * * *
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission concludes the following:
 CONCLUSIONS OF LAW
1. Plaintiff suffered an injury by accident arising out of and in the course of his employment on April 7, 2004, when Mr. Chavez attacked him at work. N.C. Gen. Stat. § 97-2(6); Withers v.Black, 230 N.C. 428, 53 S.E.2d 688 (1949). The injury arose from a dispute over the manner in which Defendant's assigned work was to be done.
2. The medical evidence in support of Plaintiff's disability is incomplete and the record should be reopened for an evaluation of Plaintiff's condition, the extent of his disability related to his injury and his need for further medical treatment.
3. Plaintiff has suffered serious facial disfigurement for which he is entitled to compensation pursuant to N.C. Gen. Stat. § 97-31 (21). The statute is mandatory in providing that proper and equitable compensation shall be awarded for serious facial or head disfigurement. Cates v. Hunt Constr. Co., 267 N.C. 332,101 S.E.2d 604 (1966). For his facial disfigurement, proper and equitable compensation is $8,000.00.
4. Plaintiff's average weekly wage is $257.51, with a resulting compensation rate of $171.76.
5. Plaintiff is entitled to have Defendant pay for medical expenses incurred, or to be incurred as a result of his compensable injury for so long as such treatment may reasonably be required to provide relief, effect a cure or lessen the period of disability. N.C. Gen. Stat. §§ 97-2(19); 97-25.
6. Plaintiff did not constructively refuse suitable employment as he did not provoke the assault that led to his termination and there was no misconduct on his part. Seagraves v. The Austin Co.of Greensboro, 123 N.C. App. 228, 472 S.E.2d 397 (1996).
 * * * * * * * * * * *
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. For his serious facial disfigurement, Plaintiff is hereby awarded $8,000.00, such sum to be made payable to Plaintiff in a lump sum. Defendant's obligation to pay this award for disfigurement shall not be affected by the decision herein to remand for further evidence.
2. Defendant shall pay all reasonable medical expenses incurred or to be incurred by Plaintiff as a result of his compensable injury for so long as such treatment tends to effect a cure, give relief, or lessen the period of disability when bills are submitted according to procedures approved by the Commission, including the evaluations ordered on remand and any related treatment recommended by Plaintiff's physicians.
3. A reasonable attorney's fee of twenty five percent of the compensation awarded Plaintiff herein is approved for Plaintiff's counsel.
4. The medical evidence in support of Plaintiff's claim for disability is incomplete. IT IS THEREFORE ORDERED that the record is hereby reopened for a medical evaluation of Plaintiff's current condition including whether he sustained nerve damage, the presentation of further evidence on his disability and for further medical treatment, if needed. This case is hereby remanded to the Deputy Commissioner Section for a hearing, if necessary. The Deputy Commissioner shall gather the evidence and forward it to the Full Commission for entry of a final decision on Plaintiff's entitlement to further compensation, if any.
5. Defendant shall pay the costs.
This the __ day of July 2006.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ LAURA K. MAVRETIC COMMISSIONER